**ROSS LLP**
Peter W. Ross (SBN: 109741)
   pross@rossllp.la
Tyler J. King (SBN: 262547)
   tking@rossllp.la
1900 Avenue of the Stars, Suite 1225
Los Angeles, CA  90067
Telephone: (424) 704-5600
Facsimile: (424) 704-5680

Fahim Farivar, Esq. (SBN: 252153)
   *Fahim@farivarlaw.com*
Brian Ning, Esq. (SBN: 330366)
   *Brian@farivarlaw.com*
Catherine Y. Jung, Esq. (SBN: 337626)
   *Catherine@farivarlaw.com*
**FARIVAR LAW FIRM, APC**
18321 Ventura Blvd., Suite 750
Tarzana, CA 91356
Telephone: 818.796.2060
Facsimile: 818.812.7868

Attorneys for Plaintiffs Pixior Global
Logistics, LLC and E-Comm Fulfillment 3PL

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| PIXIOR GLOBAL LOGISTICS, LLC, a California limited liability company; E-COMM FULFILLMENT 3PL, a California corporation,<br><br>                    Plaintiffs,<br><br>vs.<br><br>WALMART, INC., a Delaware corporation; EDWARD ROBERTS LLC *dba* ERlifescience, a New York limited liability company; JOSEPH BIBI, an individual; and DOES 1-10,<br><br>                    Defendants. | Case No. 5:22-cv-00561<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **FRAUDULENT CONCEALMENT**<br>3. **INTENTIONAL MISREPRESENTATION**<br>4. **NEGLIGENT MISREPRESENTATION**<br>5. **UNFAIR BUSINESS PRACTICES**<br>6. **QUANTUM MERUIT**<br><br>**DEMAND FOR JURY TRIAL** |

**COME NOW** Plaintiffs Pixior Global Logistics, LLC ("Pixior") and E-Comm Fulfillment 3PL ("E-Comm") and file this complaint against Walmart, Inc. ("Walmart"), Edward Roberts, LLC *dba* ERlifescience ("ER"), and Joseph Bibi ("Bibi"), as follows:

## INTRODUCTION

1.     As the world's largest retailer, Walmart is well-practiced at turning any situation to its advantage.  When the COVID-19 pandemic hit, Walmart knew that disinfectant products would be in high demand.  To turn that demand into profit, Walmart sourced new products, including one called "Disinfex," from unproven suppliers, such as defendant ER.  By these means, Walmart kept its shelves stocked and profited handsomely.

2.     But then came unwelcome news.  The United States Environmental Protection Agency ("EPA") determined that Disinfex required registration with the EPA.  The product, however, was not registered.  Therefore, it was not legal for re-sale.  Walmart had to remove the product from store shelves and dispose of it properly.  Doing so, however, would be time-consuming and costly.  And Walmart was not willing to wait or tie up its own warehouses with these worthless goods pending destruction.

3.     Defendants devised a clever solution.  Defendants identified some unsuspecting warehousing companies, including plaintiffs here, and offered to pay them well to take possession of enormous quantities of the product, for "a short period of time," "just until it could be relabeled."  Then, once the product had been delivered, defendants turned their backs on the warehouses, refusing to pay the bill or even communicate concerning relabeling or disposal of the product.  Defendants simply washed their hands of the matter, leaving plaintiffs with thousands of pallets of worthless goods, clogging their warehouses, and no immediate recourse other than undertaking themselves the time-consuming and expensive process of destroying the merchandise.

4.     This lawsuit seeks to hold defendants responsible for their wrongful and duplicitous actions.

## **THE PARTIES**

5.     Plaintiff Pixior is, and at all times relevant hereto was, a California limited liability company with its principal place of business in Los Angeles County, California.

6.     Plaintiff E-Comm is, and at all times relevant hereto was, a California corporation with its principal place of business in Riverside County, California.

7.     Plaintiffs are informed and believe and thereon allege that defendant Walmart is, and at all times relevant hereto was, a Delaware corporation with its principal place of business in Bentonville, Arkansas.

8.     Plaintiffs are informed and believe and thereon allege that defendant ER is, and at all times relevant hereto was, a New York limited liability company with its principal place of business in New York, New York.

9.     Plaintiffs are informed and believe and thereon allege that defendant Bibi is, and at all times relevant hereto was, an individual residing in New York, New York.

10.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1 through 10, are presently unknown to plaintiffs, and for that reason these defendants are sued by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Doe defendants is in some way legally responsible for the damages herein alleged.  Plaintiffs will seek leave of court to amend this complaint when the true names and capacities of said defendants are known.

11.     Plaintiffs are informed and believe and thereon allege that defendants are and at all times herein mentioned were the agents, representatives, and/or employees of one another and were acting within the course and scope of said agency, representation and/or employment with the knowledge and consent of the remaining

1   defendants.

2       12.     Plaintiffs are informed and believe and thereon allege that there exists,

3   and, at all times herein mentioned, there existed a unity of interest between defendants

4   ER and Bibi, such that any individuality and separateness between said defendants has

5   ceased, and each of these defendants is the alter ego of the other defendant, and

6   adherence to the fiction of the separate existence of the defendants would permit an

7   abuse of the corporate privilege, sanction fraud and promote injustice.

8                       **JURISDICTION AND VENUE**

9       13.     This Court has subject-matter jurisdiction over this action under 28

10  U.S.C. section 1332 in that the matter in controversy exceeds the sum of $75,000,

11  exclusive of interest and costs, and is between citizens of different states.

12      14.     This Court has personal jurisdiction over the defendants in that some of

13  the claims asserted herein arise out of warehousing services requested by defendants

14  in California and performed by plaintiff E-Comm in Riverside County, California.

15      15.     Venue is proper pursuant to 28 U.S.C. section 1391(b)(2) because a

16  substantial part of the events or omissions giving rise to the claims occurred and

17  continue to occur in the County of Riverside, California.

18                      **FACTUAL BACKGROUND**

19           **Walmart Sources Disinfectant Wipes from ER and Bibi**

20                 **that Violate EPA Regulations**

21      16.     In or around March 2020, the COVID-19 pandemic gripped the nation.

22  Demand for disinfectant products rose dramatically.  To meet demand, retailers such

23  as Walmart turned to new, untested suppliers.  Walmart turned to ER and its principal,

24  Joseph Bibi, and purchased large quantities of disinfectant wipes, marketed under the

25  brand name "Disinfex" (the "Product").

26      17.     In or around February 2021, Walmart recalled the product, citing EPA

27  regulations.  On information and belief, the EPA determined that the Product was

28  required to be registered; it was not; and therefore the Product could not legally be

**COMPLAINT**

1  sold.  Further, due to the chemical composition of the Product, it had to be disposed of
2  properly.  It could not simply be taken to the local garbage dump.  Additional steps
3  were needed, such as shredding the Product and disposal in an approved landfill or
4  possibly incineration.  In short, Walmart had a huge problem.  Walmart had massive
5  amounts of Product on hand.  Walmart had to get the Product off its shelves and out of
6  its stores immediately.  Disposing of the Product would be time-consuming and
7  expensive.  And Walmart did not want to tie up its own warehouses with this
8  worthless product.

9       18.    On information and belief, Walmart conferred with Bibi and came up
10 with a plan.  They would dispose of as much Product as could be properly
11 shredded/buried/incinerated within a short time frame.  The balance, they would ship
12 to independent warehouses to hold until that Product could be properly destroyed as
13 well.  Bibi was charged with responsibility to find the warehouse space.  ER would
14 have to pay to transport the Product, store it, and dispose of it properly.  Further, ER
15 would have to refund to Walmart all monies paid for the purchase of the Product in
16 the first place.

17      19.    On information and belief, after refunding the purchase price to Walmart,
18 ER did not have the funds or the resources to store, or properly dispose of, the
19 Product.  At all material times, Bibi was well aware of these facts.

20      20.    On information and belief, in or around February 2021, Bibi, acting on
21 behalf of defendants, telephoned Chuck Price, the principal of a warehousing
22 company, known as Advance Warehouse Logistics ("AWL"), located in Rancho
23 Cucamonga, California.  ER had been using AWL to import the Product from China,
24 in the first instance, and distribute the Product in the United States.  Bibi explained
25 that the Product did not comply with EPA labeling requirements, and Walmart was
26 returning a large quantity, almost three million units, for relabeling.  Bibi asked
27 whether AWL could accept the returned Product for storage, for a short period of
28 time, until it could be relabeled.  He represented that ER would timely pay all the

customary charges associated with receiving, storing, and handling the Product.  He did not mention that:  a good portion of the Product was being destroyed; destruction of the Product was a slow and expensive process; Walmart did not want the Product back; ER could not afford to store, or relabel, or properly dispose of the Product; and ER intended to abandon the product at the warehouse (the "Concealed Facts").  Price responded that AWL did not have the capacity to receive a significant volume of returned Product.  Bibi asked Price whether he could find alternative warehouse space. He agreed to look.

21.  On information and belief, at the time Bibi asked Price to find alternative warehouse space, Bibi knew or had reason to believe that Price would repeat to managers of other warehouses the representations referenced above, or the substance of those representations, namely that:  the Product did not meet EPA labeling standards; Walmart was returning a large quantity, almost three million units, for relabeling; Bibi, ostensibly acting on behalf of ER and Walmart, was asking whether the warehouse could accept the returned Product for storage, for a short period of time, until it could be relabeled; and ER would pay all of AWL's customary charges associated with receiving, storing, and handling the Product.  Further, Bibi knew or had reason to believe that the other warehouse managers would rely on these representations in deciding whether to accept the Product for storage.

**Defendants Fraudulently Induce Pixior**

**to Accept and Warehouse the Product**

22.  Pixior is in the business of providing warehousing and fulfillment services for its customers.  Pixior has warehouses in Los Angeles and Connecticut.

23.  On or around February 26, 2021, Price, acting on behalf of defendants, telephoned Pixior representative Simon Bouzaglou.  Price repeated to Bouzaglou in substance what Bibi had told Price:  that ER had sold the Product to Walmart; the Product was being returned, almost three million units, for relabeling; ER and Walmart needed a place to store it temporarily, until it could be relabeled; and ER

**COMPLAINT**

would timely pay all of AWL's customary charges for receiving, storing, and handling the Product.  Price asked whether Pixior could store the product, for these purposes, at its warehouse located at 500 Bic Drive Building 3, Milford, CT 06461 (the "Pixior Warehouse").  Price and Bouzaglou discussed terms and came to the following tentative agreement (the "Pixior Agreement"):

- Pixior would store the Product for a short term at the Pixior Warehouse, just until the Product could be relabeled;
- The fees would match those that AWL charged to ER, as set forth on exhibit A, which is incorporated herein by reference;
- Bibi's company, defendant ER, would pay the charges promptly upon invoice.

Again, no mention was made of the Concealed Facts.

24.    On or about March 2, 2021, Walmart representatives contacted Pixior representative Christopher Motasky to confirm that Pixior would accept Product for storage that was being returned from Walmart.  Pixior so confirmed.  Walmart employee Shelby Dillinger ("Dillinger"), a senior manager of "reverse logistics" at Walmart, represented to Pixior that Walmart was in charge of the Product return.  She took the lead in arranging for transportation of the Product.  She directed and coordinated the pickup of the Product from Walmart distribution centers and the drop-off of the Product at the Pixior Warehouse.  For these purposes, she used Walmart's own supply chain and logistics provider, Yusen Logistics (Americas) Inc. ("Yusen"). The delivery of the Product commenced on March 8, 2021 and continued over the course of the next month.

25.    On March 9, 2021, ER representative Matthew Dweck, acting on behalf of defendants, spoke by telephone with Pixior manager Christopher Motasky.  Dweck confirmed that the terms of agreement between ER and Pixior were those that had been negotiated between Chuck Price and Simon Bouzaglou on February 26, 2021. Dweck did not mention the Concealed Facts.

**COMPLAINT**

26.     Pixior was ignorant of the Concealed Facts and had no reason to suspect they were true.  Had Pixior been aware of these facts, it would not have entered into the Pixior Agreement or accepted the Product into its warehouse.

27.     After accepting delivery of the Product, Pixior invoiced ER monthly for the agreed fees.  ER paid the fees only so long as Product was being delivered.  As soon as delivery was complete, ER ceased paying.  Pixior demanded that ER pay the bills.  ER, Dweck, and Bibi have been unresponsive.  Currently, over $180,000 is owed.

28.     Subsequently, Pixior learned that, due to its chemical composition, the Product would cost over $500,000 to dispose of properly.  Pixior demanded of Bibi and ER that they remove the Product from the Pixior Warehouse.  Again, both Bibi and ER have been unresponsive.

29.     Pixior demanded that Walmart pay the fees due and remove its Product. Walmart has been unresponsive.

30.     Pixior remains in possession of the Product.  As a result, Pixior cannot use its warehouse for other, paying customers and is losing business.

## Defendants Fraudulently Induce E-Comm
## to Accept and Warehouse the Product

31.     E-Comm is in the business of providing warehousing and fulfillment services for its customers.  E-Comm has a warehouse in Riverside, CA.

32.     On or around March 8, 2021, Price, acting on behalf of defendants, telephoned E-Comm representative Cristobal Gastelum.  Price repeated to Gastelum in substance what Bibi had told Price:  that ER had sold the Product to Walmart; the Product was being returned, almost three million units, for relabeling; ER and Walmart needed a place to store it temporarily, until it could be relabeled; and ER would timely pay all of AWL's customary charges for receiving, storing, and handling the Product.  Price asked whether E-Comm could store the product, for these purposes, at its warehouse located at 250 Palmyrita Avenue, Suite 1, Riverside,

California 92507 (the "E-Comm Warehouse").  Price and Gastelum discussed terms and came to the following tentative agreement (the "E-Comm Agreement"):

- E-Comm would store the Product for a short term at the E-Comm Warehouse, just until the Product could be relabeled;
- The fees would match those that AWL charged to ER, as set forth on exhibit A, which is incorporated herein by reference;
- Bibi's company, defendant ER, would pay the charges promptly upon invoice.

Again, no mention was made of the Concealed Facts.

33.    On March 8, 2021, ER representative Matthew Dweck, acting on behalf of defendants, spoke by telephone with Price.  Dweck confirmed that the terms of agreement that had been negotiated between Chuck Price and Gastelum on March 8, 2021 were accepted by ER.  Dweck did not mention the Concealed Facts.

34.    On or about March 12, 2021, Walmart representatives contacted E-Comm representative Gastelum to confirm that E-Comm would accept Product for storage that was being returned from Walmart.  E-Comm so confirmed.  Walmart took the lead in arranging for transportation of the Product to E-Comm.  For these purposes, Walmart used its own supply chain and logistics providers, Yusen and Propack Corporation.  The delivery of the Product commenced on March 15, 2021 and continued over the course of the next month.

35.    E-Comm was ignorant of the Concealed Facts and had no reason to suspect they were true.  Had E-Comm been aware of these facts, it would not have entered into the E-Comm Agreement or accepted the Product into its warehouse.

36.    After accepting delivery of the Product, E-Comm invoiced ER monthly for the agreed fees.  ER paid the fees only so long as Product was being delivered.  As soon as delivery was complete, ER ceased paying.  E-Comm demanded that ER pay the bills.  ER, Dweck, and Bibi have been unresponsive.  Currently, over $350,000 is owed.

37.     Subsequently, E-Comm learned that, due to its chemical composition, the Product would cost over $500,000 to dispose of properly.  E-Comm demanded of Bibi and ER that they remove the Product from the E-Comm Warehouse.  Again, both Bibi and ER have been unresponsive.

38.     E-Comm demanded that Walmart pay the fees due and remove its Product.  Walmart has been unresponsive.

39.     E-Comm remains in possession of the Product.  As a result, E-Comm cannot use its warehouse for other, paying customers and is losing business and is now on the brink of financial collapse.

## FIRST CAUSE OF ACTION

### Breach of Contract

### (By Pixior Against ER, Bibi and Does 1-5)

40.     Pixior realleges and incorporates by reference all above paragraphs of this Complaint as though fully set forth herein.

41.     On or about February 26, 2021, Pixior and ER entered into an oral agreement, the terms of which are:

- Pixior would store the Product for a short term at the Pixior Warehouse, just until the Product could be relabeled;
- The fees would match those that AWL charged to ER, as set forth on exhibit A, which is incorporated herein by reference;
- Bibi's company, defendant ER, would pay the charges promptly upon invoice.

42.     Pixior has timely performed all terms, conditions, and covenants on its part to be performed pursuant to the Pixior Agreement, except to the extent that such performance has been prevented or otherwise excused by the conduct of the defendants as alleged herein.

43.     Defendants breached the express terms, representations, and warranties contained in the Pixior Agreement by, among other things, failing to pay the amounts

**COMPLAINT**

due on the invoices for warehousing services and failing to retrieve and/or otherwise dispose of the Product.

44.     As a direct and proximate result of defendants' breaches of the Pixior Agreement, Pixior has been damaged in an amount to be proven at trial, in excess of $1 million, and incurred incidental and consequential damages in excess of $26 million.

**(By E-Comm Against ER, Bibi and Does 6-10)**

45.     E-Comm realleges and incorporates by reference all above paragraphs of this Complaint as though fully set forth herein.

46.     On or about March 8, 2021, E-Comm and ER entered into an oral agreement, the terms of which are:

- E-Comm would store the Product for a short term at the E-Comm Warehouse, just until the Product could be relabeled;
- The fees would match those that AWL charged to ER, as set forth on exhibit A, which is incorporated herein by reference;
- Bibi's company, defendant ER, would pay the charges promptly upon invoice.

47.     E-Comm has timely performed all terms, conditions, and covenants on its part to be performed pursuant to the E-Comm Agreement, except to the extent that such performance has been prevented or otherwise excused by the conduct of the defendants as alleged herein.

48.     Defendants breached the express terms, representations, and warranties contained in the E-Comm Agreement by, among other things, failing to pay the amounts due on the invoices for warehousing services and failing to retrieve and/or otherwise dispose of the Product.

49.     As a direct and proximate result of defendants' breaches of the agreement, E-Comm has been damaged in an amount to be proven at trial, in excess of $1 million, and incurred incidental and consequential damages in excess of $1.6

1    million.

2    ## SECOND CAUSE OF ACTION

3    **Fraudulent Concealment**

4    **(By Pixior Against ER, Bibi, and Does 1-5)**

5    50.     Pixior realleges and incorporates herein by reference all above
6    paragraphs of this Complaint as though fully set forth herein.

7    51.     On or about February 26, 2021, Pixior and ER entered into the Pixior
8    Agreement, pursuant to which Pixior agreed to accept the Product into its warehouse.

9    52.     The Pixior Agreement was negotiated between defendants' representative
10    Price and Pixior's representative Bouzaglou.  On information and belief, at the time of
11    the negotiation, defendants knew or had reason to believe that Price would repeat to
12    Bouzaglou the representations made by Bibi to Price, or the substance of those
13    representations, namely that:  the Product did not meet EPA labeling standards;
14    Walmart was returning a large quantity, almost three million units, for relabeling;
15    Bibi, ostensibly acting on behalf of ER and Walmart, was asking whether the
16    warehouse could accept the returned Product for storage, for a short period of time,
17    until it could be relabeled; and ER would timely pay all of AWL's customary charges
18    for receiving, storing, and handling the Product.  Further, defendants knew or had
19    reason to believe that Pixior would rely on these representations in deciding whether
20    to accept the Product for storage.

21    53.     On information and belief, during the negotiation of the Pixior
22    Agreement, defendants were aware of, but failed to disclose the Concealed Facts.

23    54.     Defendants were under a duty to disclose these facts to Pixior because:

24         •   During the negotiation of the Pixior Agreement, defendants knew that
25            their representative Price would disclose some facts relating to the
26            return from Walmart of the Product and storage of the Product, but
27            Defendants intentionally failed to disclose the Concealed Facts,
28            making the facts actually disclosed deceptive; and

- Defendants intentionally failed to disclose the Concealed Facts, knowing that those facts were known only to defendants and not to Pixior and could not reasonably have been discovered by Pixior.

55.    Defendants intended to deceive Pixior by concealing the facts listed above.  Specifically, defendants intended to induce Pixior to enter into the Pixior Agreement and accept the Product into its warehouse.

56.    Pixior did not know of the Concealed Facts.  Had it been aware of the concealed facts, Pixior would not have entered into the Pixior Agreement or accepted the Product into its warehouse.

57.    As a direct and proximate result of defendants' concealment of facts, as alleged above, Pixior has been damaged in a sum which is presently unknown but which is in excess of $27 million and which will be shown according to proof at trial.

58.    Pixior is informed and believes and thereon alleges that, in doing the acts hereinabove alleged, defendants acted with oppression, fraud, and malice, and in conscious disregard of the rights of Pixior, and Pixior is therefore entitled to punitive damages in an amount to be proven at trial.

**(By E-Comm Against ER, Bibi, and Does 6-10)**

59.    E-Comm realleges and incorporates herein by reference all above paragraphs of this Complaint as though fully set forth herein.

60.    In or about March 8, 2021, E-Comm and ER entered into the E-Comm Agreement, pursuant to which E-Comm agreed to accept the Product into its warehouse.

61.    The E-Comm Agreement was negotiated by telephone between defendants' representative Price and Pixior's representative Gastelum.  On information and belief, at the time of the negotiation, defendants knew or had reason to believe that Price would repeat to Gastelum the representations made by Bibi to Price, or the substance of those representations, namely that:  the Product did not meet EPA labeling standards; Walmart was returning a large quantity, almost three million

units, for relabeling; Bibi, ostensibly acting on behalf of ER and Walmart, was asking whether the warehouse could accept the returned Product for storage, for a short period of time, until it could be relabeled; and ER would timely pay all of AWL's customary charges for receiving, storing, and handling the Product.  Further, defendants knew or had reason to believe that E-Comm would rely on these representations in deciding whether to accept the Product for storage.

62.    On information and belief, during the negotiation of the E-Comm Agreement, defendants were aware of, but failed to disclose the Concealed Facts.

63.    Defendants were under a duty to disclose these facts to E-Comm because:

- During the negotiation of the E-Comm Agreement, defendants knew that their representative Price would disclose some facts relating to the return from Walmart of the Product and storage of the Product, but Defendants intentionally failed to disclose the Concealed Facts, making the facts actually disclosed deceptive; and

- Defendants intentionally failed to disclose the Concealed Facts, knowing that those facts were known only to defendants and not to E-Comm and could not reasonably have been discovered by E-Comm.

64.    Defendants intended to deceive E-Comm by concealing the facts listed above.  Specifically, defendants intended to induce E-Comm to enter into the E-Comm Agreement and accept the Product into its warehouse.

65.    E-Comm did not know of the concealed facts.  Had it been aware of the concealed facts, E-Comm would not have entered into the E-Comm Agreement or accepted the Product into its warehouse.

66.    As a direct and proximate result of defendants' concealment of facts, as alleged above, E-Comm has been damaged in a sum which is presently unknown but which is in excess of $2.6 million and which will be shown according to proof at trial.

67.    E-Comm is informed and believes and thereon alleges that, in doing the

**PAGE 14**
**COMPLAINT**

1  acts hereinabove alleged, defendants acted with oppression, fraud, and malice, and in
2  conscious disregard of the rights of E-Comm, and E-Comm is therefore entitled to
3  punitive damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**Intentional Misrepresentation**

**(By Pixior Against ER, Bibi and Does 1-5)**

68.    Pixior realleges and incorporates herein by reference all above
paragraphs of this Complaint as though fully set forth herein.

69.    On or about February 26, 2021, Pixior and ER entered into the Pixior
Agreement, pursuant to which Pixior agreed to accept the Product into its warehouse.

70.    The Pixior Agreement was negotiated by telephone between defendants'
representative Price and Pixior's representative Bouzaglou.  On information and
belief, at the time of the negotiation, defendants knew or had reason to believe that
Price would repeat to Bouzaglou the representations made by Bibi to Price, or the
substance of those representations, namely that:  the Product did not meet EPA
labeling standards; Walmart was returning a large quantity, almost three million units,
for relabeling; Bibi, ostensibly acting on behalf of ER and Walmart, was asking
whether the warehouse could accept the returned Product for storage, for a short
period of time, until it could be relabeled; and ER would timely pay all of AWL's
customary charges for receiving, storing, and handling the Product.  Further,
defendants knew or had reason to believe that Pixior would rely on these
representations in deciding whether to accept the Product for storage.

71.    Pixior is informed and believes and thereon alleges that the facts
represented above were false.  The truth was:

- Defendants had no intention of relabeling the Product and returning it
to Walmart;
- Walmart did not want the Product back;
- Defendants did not intend to leave the Product at the Pixior

**PAGE 15**

**COMPLAINT**

Warehouse for only a short period of time; rather, Defendants intended to abandon the Product there;

- Defendants had no intention of paying the warehousing charges that would be incurred, pursuant to the Pixior Agreement; defendants were financially incapable of paying those charges.

72. Defendants knew the representations alleged above were false when made, or defendants made the representations recklessly and without regard for their truth.

73. Defendants intended for Pixior to rely on the representations. Specifically, defendants intended to induce Pixior to enter into the Pixior Agreement and accept the Product into its warehouse.

74. Pixior did not know the representations were false and reasonably relied on them in entering into the Pixior Agreement and accepting the Product into its warehouse. Had Pixior been aware of the falsity of the representations, it would not have entered into the Pixior Agreement or accepted the Product into its warehouse.

75. As a direct and proximate result of defendants' fraud, as alleged above, Pixior has been damaged in a sum which is presently unknown but which is in excess of $27 million and which will be shown according to proof at trial.

76. Pixior is informed and believes and thereon alleges that, in doing the acts hereinabove alleged, defendants acted with oppression, fraud, and malice, and in conscious disregard of the rights of Pixior, and Pixior is therefore entitled to punitive damages in an amount to be proven at trial.

**(By E-Comm Against ER, Bibi and Does 6-10)**

77. E-Comm realleges and incorporates herein by reference all above paragraphs of this Complaint as though fully set forth herein.

78. On or about March 8, 2021, E-Comm and ER entered into the E-Comm Agreement, pursuant to which E-Comm agreed to accept the Product into its warehouse.

79.     The E-Comm Agreement was negotiated by telephone between defendants' representative Price and E-Comm's representative Gastelum.  On information and belief, at the time of the negotiation, defendants knew or had reason to believe that Price would repeat to Gastelum the representations made by Bibi to Price, or the substance of those representations, namely that:  the Product did not meet EPA labeling standards; Walmart was returning a large quantity, almost three million units, for relabeling; Bibi, ostensibly acting on behalf of ER and Walmart, was asking whether the warehouse could accept the returned Product for storage, for a short period of time, until it could be relabeled; and ER would timely pay all of AWL's customary charges for receiving, storing, and handling the Product.  Further, defendants knew or had reason to believe that E-Comm would rely on these representations in deciding whether to accept the Product for storage.

80.     E-Comm is informed and believes and thereon alleges that the facts represented above were false.  The truth was:

- Defendants had no intention of relabeling the Product and returning it to Walmart;
- Walmart did not want the Product back;
- Defendants did not intend to leave the Product at the E-Comm Warehouse for only a short period of time; rather, Defendants intended to abandon the Product there;
- Defendants had no intention of paying the warehousing charges that would be incurred, pursuant to the E-Comm Agreement; defendants were financially incapable of paying those charges.

81.     Defendants knew the representations alleged above were false when made, or defendants made the representations recklessly and without regard for their truth.

82.     Defendants intended for E-Comm to rely on the representations. Specifically, defendants intended to induce E-Comm to enter into the E-Comm

**COMPLAINT**

1  Agreement and accept the Product into its warehouse.

2      83.    E-Comm did not know the representations were false and reasonably

3  relied on them in entering into the E-Comm Agreement and accepting the Product into

4  its warehouse.  Had E-Comm been aware of the falsity of the representations, it would

5  not have entered into the E-Comm Agreement or accepted the Product into its

6  warehouse.

7      84.    As a direct and proximate result of defendants' fraud, as alleged above,

8  E-Comm has been damaged in a sum which is presently unknown but which is in

9  excess of $2.6 million and which will be shown according to proof at trial.

10      85.    E-Comm is informed and believes and thereon alleges that, in doing the

11  acts hereinabove alleged, defendants acted with oppression, fraud, and malice, and in

12  conscious disregard of the rights of E-Comm, and E-Comm is therefore entitled to

13  punitive damages in an amount to be proven at trial.

14              **FOURTH CAUSE OF ACTION**

15              **Negligent Misrepresentation**

16          **(By Pixior Against ER, Bibi and Does 1-5)**

17      86.    Pixior realleges and incorporates herein by reference all above

18  paragraphs of this Complaint as though fully set forth herein.

19      87.    On or about February 26, 2021, Pixior and ER entered into the Pixior

20  Agreement, pursuant to which Pixior agreed to accept the Product into its warehouse.

21      88.    The Pixior Agreement was negotiated by telephone between defendants'

22  representative Price and Pixior's representative Bouzaglou.  On information and

23  belief, at the time of the negotiation, defendants knew or had reason to believe that

24  Price would repeat to Bouzaglou the representations made by Bibi to Price, or the

25  substance of those representations, namely that:  the Product did not meet EPA

26  labeling standards; Walmart was returning a large quantity, almost three million units,

27  for relabeling; Bibi, ostensibly acting on behalf of ER and Walmart, was asking

28  whether the warehouse could accept the returned Product for storage, for a short

**COMPLAINT**

period of time, until it could be relabeled; and ER would timely pay all of AWL's customary charges for receiving, storing, and handling the Product. Further, defendants knew or had reason to believe that Pixior would rely on these representations in deciding whether to accept the Product for storage.

89. Pixior is informed and believes and thereon alleges that the facts represented above were false. The truth was:

- Defendants had no intention of relabeling the Product and returning it to Walmart;
- Walmart did not want the Product back;
- Defendants did not intend to leave the Product at the Pixior Warehouse for only a short period of time; rather, Defendants intended to abandon the Product there;
- Defendants had no intention of paying the warehousing charges that would be incurred, pursuant to the Pixior Agreement; defendants were financially incapable of paying those charges.

90. Defendants may have honestly believed that the representations alleged above were true when made, but defendants had no reasonable grounds for doing so.

91. Defendants intended for Pixior to rely on the representations. Specifically, defendants intended to induce Pixior to enter into the Pixior Agreement and accept the Product into its warehouse.

92. Pixior did not know the representations were false and reasonably relied on them in entering into the Pixior Agreement and accepting the Product into its warehouse. Had Pixior been aware of the falsity of the representations, it would not have entered into the Pixior Agreement or accepted the Product into its warehouse.

93. As a direct and proximate result of defendants' fraud, as alleged above, Pixior has been damaged in a sum which is presently unknown but which is in excess of $27 million and which will be shown according to proof at trial.

**COMPLAINT**

1

2                     **(By E-Comm Against ER, Bibi and Does 6-10)**

3          94.    E-Comm realleges and incorporates herein by reference all above

4    paragraphs of this Complaint as though fully set forth herein.

5          95.    On or about March 8, 2021, E-Comm and ER entered into the E-Comm

6    Agreement, pursuant to which E-Comm agreed to accept the Product into its

7    warehouse.

8          96.    The E-Comm Agreement was negotiated by telephone between

9    defendants' representative Price and E-Comm's representative Gastelum.  On

10   information and belief, at the time of the negotiation, defendants knew or had reason

11   to believe that Price would repeat to Gastelum the representations made by Bibi to

12   Price, or the substance of those representations, namely that:  the Product did not meet

13   EPA labeling standards; Walmart was returning a large quantity, almost three million

14   units, for relabeling; Bibi, ostensibly acting on behalf of ER and Walmart, was asking

15   whether the warehouse could accept the returned Product for storage, for a short

16   period of time, until it could be relabeled; and ER would timely pay all of AWL's

17   customary charges for receiving, storing, and handling the Product.  Further,

18   defendants knew or had reason to believe that E-Comm would rely on these

19   representations in deciding whether to accept the Product for storage.

20         97.    E-Comm is informed and believes and thereon alleges that the facts

21   represented above were false.  The truth was:

22              • Defendants had no intention of relabeling the Product and returning it

23                to Walmart;

24              • Walmart did not want the Product back;

25              • Defendants did not intend to leave the Product at the E-Comm

26                Warehouse for only a short period of time; rather, Defendants

27                intended to abandon the Product there;

28              • Defendants had no intention of paying the warehousing charges that

**PAGE 20**
**COMPLAINT**

1           would be incurred, pursuant to the E-Comm Agreement; defendants

2           were financially incapable of paying those charges.

3      98.   Defendants may have honestly believed that the representations alleged

4 above were true when made, but defendants had no reasonable grounds for doing so.

5      99.   Defendants intended for E-Comm to rely on the representations.

6 Specifically, defendants intended to induce E-Comm to enter into the E-Comm

7 Agreement and accept the Product into its warehouse.

8      100.  E-Comm did not know the representations were false and reasonably

9 relied on them in entering into the E-Comm Agreement and accepting the Product into

10 its warehouse.  Had E-Comm been aware of the falsity of the representations, it would

11 not have entered into the E-Comm Agreement or accepted the Product into its

12 warehouse.

13      101.  As a direct and proximate result of defendants' fraud, as alleged above,

14 E-Comm has been damaged in a sum which is presently unknown but which is in

15 excess of $2.6 million and which will be shown according to proof at trial.

16 

**FIFTH CAUSE OF ACTION**

17 **Unfair Business Practices**

18 **(By Pixior Against Walmart, ER, Bibi and Does 1-5)**

19      102.  Pixior realleges and incorporates herein by reference all above

20 paragraphs of this Complaint as though fully set forth herein.

21      103.  Over the course of their business dealings with Pixior, defendants

22 violated California's unfair competition law, Business & Professions Code section

23 17200, et seq., by committing unlawful, unfair and/or fraudulent acts including, but

24 not limited to, abandoning products at Pixior's warehouse that were worthless and

25 require special handling for disposal.

26      104.  As a result of these acts, Pixior has suffered economic injury, and

27 defendants have acquired money or property from Pixior unfairly.

28      105.  Unless defendants are restrained from continuing these acts of unfair

competition, Pixior will continue to lose customers, and suffer irreparable harm to its business and property, and may be forced to bring a multiplicity of actions.

**(By E-Comm Against Walmart, ER, Bibi and Does 6-10)**

106.   E-Comm realleges and incorporates herein by reference all above paragraphs of this Complaint as though fully set forth herein.

107.   Over the course of their business dealings with E-Comm, defendants violated California's unfair competition law, Business & Professions Code section 17200, et seq., by committing unlawful, unfair and/or fraudulent acts including, but not limited to, abandoning products at E-Comm's warehouse, that were worthless and require special handling for disposal.

108.   As a result of these acts, E-Comm has suffered economic injury, and defendants have acquired money or property from E-Comm unfairly.

109.   Unless defendants are restrained from continuing these acts of unfair competition, E-Comm will continue to lose customers, and suffer irreparable harm to its business and property, and may be forced to bring a multiplicity of actions.

## SIXTH CAUSE OF ACTION

### Quantum Meruit

**(By Pixior Against Walmart, ER, Bibi and Does 1-5)**

110.   Pixior realleges and incorporates by reference all above paragraphs of this Complaint as though fully set forth herein.

111.   In or about February and March, 2021, defendants requested, by words and conduct, that Pixior perform warehousing services for the benefit of defendants.

112.   Pixior performed the services as requested.

113.   Defendants have not paid for the services.

114.   The reasonable value of the services is an amount to be proven at trial in excess of $1 million.

1    **(By E-Comm Against Walmart, ER, Bibi and Does 6-10)**

2    115.   E-Comm realleges and incorporates by reference all above paragraphs of

3    this Complaint as though fully set forth herein.

4    116.   In or about March and April, 2021, defendants requested, by words and

5    conduct, that E-Comm perform warehousing services for the benefit of defendants.

6    117.   E-Comm performed the services as requested.

7    118.   Defendants have not paid for the services.

8    119.   The reasonable value of the services is an amount to be proven at trial in

9    excess of $1 million.

10   **PRAYER**

11   WHEREFORE, Plaintiffs each pray for judgment as follows:

12   1.     For compensatory damages in an amount to be proven at trial, in excess of

13   $29.6 million;

14   2.     For restitution of all money and property unfairly acquired by defendants

15   from Plaintiffs;

16   3.     For exemplary and punitive damages according to proof;

17   4.     For prejudgment interest as provided by law;

18   5.     For costs and attorney's fees incurred herein;

19   6.     For a preliminary and permanent injunction requiring defendants to

20   remove the Product from plaintiffs' warehouses and properly dispose of it; and

21   7.     For such further and additional relief as the Court deems just and proper.

22

23

24   Dated: April 1, 2022                    **ROSS LLP**

25

26                                   By: ___*/s/ Peter W. Ross*_____
                                            Peter W. Ross
27                                          Counsel for Plaintiffs
                                            Pixior Global Logistics, LLC and
28                                          E-Comm Fulfillment 3PL

**PAGE 23**

**COMPLAINT**

1

## **DEMAND FOR JURY TRIAL**

2

3          Plaintiffs hereby demand trial by jury for all issues so triable.

4

5    Dated: April 1, 2022                    **ROSS LLP**

6

7                                       By: _____ */s/ Peter W. Ross* _____
                                                Peter W. Ross
8                                               Counsel for Plaintiffs
                                                Pixior Global Logistics, LLC and
9                                               E-Comm Fulfillment 3PL

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**